UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FANESTER JAMES,

        Plaintiff,                        Civil Case No. 17-10506
                                                        Honorable Linda V. Parker

v.

CITY OF DETROIT, a municipal corporation,
CHIEF JAMES CRAIG, SAMUEL PIONESSA,
REGINALD BEASLEY, NICO HURD,
ALANNA MITCHELL, JUAN DAVIS,
JOHNNY FOX, SAMUEL GALLOWAY,
JASON CLARK, AND LAMAR WILLIAMS,
in their individual and official capacities,

        Defendants.
_____/

## **OPINION AND ORDER GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS (ECF NO. 3)**

This lawsuit arises from a police raid of Plaintiff's residence in Detroit, MI on or about September 6, 2016. Plaintiff alleges violations of her Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983, as well as various state law claims. Plaintiff names eleven Defendants in her Complaint filed February 16, 2017: (1) the City of Detroit, (2) Chief James Craig ("Chief Craig"), (3) Samuel Pionessa, (4) Reginald Beasley, (5) Nico Hurd, (6) Alanna Mitchell, (7) Juan Davis, (8) Johnny Fox, (9) Samuel Galloway, (10) Jason Clark, and (11) Lamar Williams, ("Individual Defendants") in their individual and official capacities. (ECF No. 1.)

Presently before the Court is Defendants City of Detroit and Chief Craig's motion to dismiss (ECF No. 3), in which all Individual Defendants concur and join in the motion to dismiss. (ECF Nos. 4, 15, 16, 17.) Plaintiff filed a response on April 10, 2017. (ECF No. 14.) For the reasons that follow, the Court grants, in part, Defendants' motion.

## I. Factual and Procedural Background

On or about September 6, 2016, while in her home, Plaintiff, a 59-year-old woman, heard a noise on her front porch and went to investigate the source of the noise. (ECF No. 1 at Pg ID 4-5.) Through the glass window of her front door, Plaintiff noticed the Individual Defendants on her front porch wearing black face masks and t-shirts that read "Police." (*Id.* at Pg ID 5.) According to Plaintiff, as she stood directly in front of her door, she made eye contact with one of the officers, who she believed to be either Defendant Reginald Beasley or Nico Hurd ("Defendant Officer #1"). (*Id.*) Despite making eye contact with Plaintiff, Defendant Officer #1 kicked in Plaintiff's front door, striking Plaintiff in the face and effectively knocking her into the wall in her front hallway. (*Id.*) Plaintiff asserts she was placed in handcuffs and instructed to sit in the living room while the Individual Defendants searched her home. (*Id.* at Pg ID 6.) While handcuffed and sitting in her living room, blood began to drip from a large gash above her eye that was caused when Defendant Officer #1 kicked the door into Plaintiff's face. (*Id.*)

After the search was complete but prior to the Individual Defendants leaving the residence, Defendant Officer #1 took Plaintiff into another room, allegedly threatening her and stating "I want to make sure that we are on the same page because I do not want to have to take you to jail." (*Id.*) Plaintiff believed this was an attempt to cover up the injuries Defendant Officer #1 caused her. Defendant Officer # 1 then told Plaintiff she did not need an ambulance and "[t]his never happened. You fell and hit your head before we got here, right?" (*Id.* at Pg ID 6-7.) Later, Defendant Officer #1 instructed Plaintiff to change her shirt because he did not want to see blood and took a photo of Plaintiff following her shirt change. (*Id.* at Pg ID 7.)

According to Plaintiff, after the Individual Defendants left her residence, she found a document titled "Search Warrant and Affidavit." (*Id.*) It stated: "'Seller#1: B/M/20, 5'10" 170 lbs, medium complexion, wearing a white t-short [sic] and blue jeans,' for narcotics, narcotics paraphernalia and all items uses [sic] for the sale, manufacture and distribution of controlled substances." (*Id.* at Pg ID 7-8.)

## II.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic

3

recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

### III. Applicable Law & Analysis

#### A. 1983 Claims

Plaintiff asserts § 1983 claims for violations of her rights under the Fourth and Fourteenth Amendments. "Section 1983 establishes 'a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Jones v. Muskegon Cnty.*, 625 F. 3d 935, 940-41 (6th Cir. 2010) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F. 3d 653, 656 (6th Cir. 1994)). A plaintiff asserting a § 1983 claim must show: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F. 3d 527, 533 (6th Cir. 2006).

As an initial matter, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Burgess v. Fischer*, 735 F. 3d 462, 473 (6th Cir. 2013). Under the facts and circumstances of this case, the Fourth Amendment is more appropriate to apply given the search and/or seizure. Because the Court finds Plaintiff's claim is more appropriately analyzed under the Fourth Amendment, the Court will decline to analyze Plaintiff's claims under the Fourteenth Amendment. As such, the Court is dismissing Plaintiff's § 1983 claim to the extent Plaintiff alleges violations of the Fourteenth Amendment.

Defendants argue that Plaintiff's claims against Defendant Craig must be dismissed because he was not personally involved with the incident and a *respondeat superior* theory is inapplicable under a § 1983 claim. To establish personal liability under § 1983, the plaintiff must show that each defendant charged "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Stated differently, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[T]he personal responsibility requirement is satisfied if the official 'acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (6th Cir. 1993). Along those same lines "it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise with his knowledge." *Id.*

The Sixth Circuit "has held that § 1983 liability must be based on more than *respondeat superior*, or the right to control employees." *Shehee v. Luttrell*, 199 F. 3d 295, 300 (1999). Supervisory liability attaches only where

> the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

6

*Id*. (quoting *Hays v. Jefferson Cnty.*, 668 F. 2d 869, 874 (6th Cir. 1982)). "Plaintiff ha[s] to prove that they did more than play a passive role in the alleged violation or showed mere tacit approval of the events." *Salehpour v. Univ. of Tenn.*, 159 F. 3d 199, 206 (6th Cir. 1998); *Peatross v. City of Memphis*, 818 F. 3d 233, 241-42 (6th Cir. 2016) ("We have long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor. However, 'active' behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation") (internal citations omitted). Where a supervisor also is a policymaker, care must be taken to distinguish an individual-capacity claim against the supervisor and an official-capacity or municipal claim, as they turn on two different legal principles. *See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).

> In *Essex*, the court explained the distinction between these two legal principles:
>
> For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have "'encouraged *the specific* incident of misconduct or in some other way directly participated in it.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A plaintiff must demonstrate that the defendant supervisor "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id*. (quoting *Shehee*, 199 F.3d at 300). A mere failure to act will not suffice to establish supervisory liability. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

7

*Essex*, 518 F. App'x at 355 (emphasis added). In contrast, an official capacity or municipal claim

> is a broader claim concerning the custom or policy of a municipality, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), and thus would implicate the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker. *See Phillips*, 534 F.3d at 543; *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012). Such claims do not require direct participation in or encouragement of the specific acts; rather, these claims may be premised on a failure to act. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). A plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, *see Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997); or 2) the fact that the constitutional violation alleged was a patently obvious and "highly predictable consequence" of inadequate training, *id*. at 409, 117 S. Ct. 1382 (discussing *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)).

*Id.*

Plaintiff asserts both theories to hold Chief Craig liable. In Counts I and II of the Complaint, Plaintiff appears to be asserting an individual liability claim against Chief Craig. Plaintiff clearly is stating an official capacity or municipal claim in Count III of the Complaint, which will be discussed in Section B. Plaintiff alleges deprivations of her constitutional rights under the Fourth Amendment. Plaintiff specifically alleges that all of the Individual Defendants, with the exception of Chief Craig, were present during the raid of her home. She asserts that either Defendant Beasley or Hurd knowingly used excessive force to enter her home, causing her

injuries. Further, Plaintiff alleges that all of the Individual Defendants unlawfully searched her home and seized her by keeping her in handcuffs while they searched her home. However, nowhere in Counts I and II does Plaintiff mention any direct involvement of Chief Craig. Plaintiff's claims are based on Chief Craig's supervisory role rather than his personal involvement, which is inappropriate under a § 1983 claim. Contrary to Plaintiff's position, the plaintiff in *Peatross* alleged specific facts to support a supervisory liability claim against the police director. The complaint alleged

> from 2009 to 2013, there had been fifty-four (54) officer shootings. From April 2012 to April 23, 2013—the day Vanterpool was killed—eighteen (18) people had been shot and/or killed at the hands of the MPD. In 2012, Director Armstrong "acknowledged a dire need to review and improve the police department's operations." Armstrong "noted that the MPD needed to improve its disciplinary process as well as the policies and procedures in line with the best law enforcement practices[;]" however, no improvements were made. In September 2012, "Mayor A.C. Wharton publicly admonished Director Armstrong and described the MPD as 'unacceptable' and in need of outside scrutiny to analyze its shortcomings in recruitment, accountability, and training in ethical standards."

*Peatross*, 818 F. 3d at 238. In this case, Plaintiff does not allege any specific conduct Chief Craig engaged in that would hold him liable under a theory of supervisory liability. Unlike in *Peatross*, the Complaint is devoid of any facts supporting that Chief Craig "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. at

239. If through discovery Plaintiff uncovers additional facts that would support her claims against Chief Craig, then she may move to re-name him.

Additionally, the Court notes that although the other Defendants concur in the motion, Defendants do not offer any specific arguments to support the dismissal of the Individual Defendants based on their lack of personal involvement, and the Court declines to address Defendants' summary arguments without being fully briefed on those issues.

Therefore, the Court concludes that Counts I and II fail to state a claim upon which relief can be granted against Chief Craig. The Court therefore is dismissing Counts I and II of the Complaint as to Chief Craig.

**B.** *Monell* **Claim**

As indicated in the preceding section, in Count III of the Complaint, Plaintiff seeks to hold the City of Detroit and Chief Craig liable under an official capacity or municipal claim. "An official-capacity claim against a person is essentially a claim against the municipality." *Peatross*, 818 F. 3d at 241.

Here, Plaintiff alleges that both the City of Detroit and Chief Craig failed to train and supervise police officers, maintained a custom of tolerance for unconstitutional behavior, and Chief Craig, an official with final decision-making authority, authorized the alleged unconstitutional behavior. (ECF No. 1 at ¶ 81.) As to Count III, Defendants simply state "to the extent Plaintiff seeks to assert liability against Chief Craig under a *Monell* theory of liability,

being [sic] a suit against Chief Craig in his official capacity as City of Detroit's Chief of Police, such a claim is essentially a claim brought against City of Detroit itself." (ECF No. 3-2 at Pg ID 65.) Defendants are correct that "official-capacity suits are only another way of pleading an action against the entity the official represents, and therefore suits against state officials in their official capacity are treated as suits against the state." *Sanchez-Orozco v. Livonia Police Dep't*, 08-cv-14297; 08-cv-14299, 2009 U.S. Dist. LEXIS 81112, at *13 (E.D. Mich. Sept. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))). As such, suing the City of Detroit, as Plaintiff has done, is sufficient for a *Monell* claim, and naming Chief Craig in his official capacity is redundant under the facts of this case. Even if Chief Craig was properly named under a supervisory liability claim, as stated previously, Plaintiff's allegations as to Chief Craig are conclusory. Without stating more, Plaintiff simply alleges that Chief Craig failed to train and supervise the police officers, and authorized unconstitutional policies.

For the reasons stated above, the Court grants Defendants' request to dismiss Chief Craig from Count III of Plaintiff's Complaint.

**C.    Qualified Immunity**

Defendants argue that Defendant Craig is entitled to qualified immunity because Plaintiff does not allege any unconstitutional behavior on his part. Qualified

11

immunity protects state actors who perform discretionary functions from being sued under § 1983 from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted). The determination of whether a government official is entitled to qualified immunity is a two-step inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Miller v. Sanilac Cnty*, 606 F. 3d 240, 247 (6th Cir. 2010) (internal quotation marks and citations omitted).

The Court notes "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F. 3d 421, 433 (6th Cir. 2015) (internal citations omitted). However, "[w]e [have'] held that . . . if the defense is properly raised prior to discovery, the district court has a duty to address it." *Summers v. Leis*, 368 F. 3d 881, 886 (6th Cir. 2004). "Rather than dismiss the . . . motion because discovery was not complete, the district court [is] required to determine—prior to permitting further discovery—whether [Plaintiff's] complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation." *Id.* "The plaintiff also must allege with particularity

12

'facts that demonstrate what *each* defendant did to violate the asserted constitutional right.' . . . 'The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right.'" *Courtright v. City of Battle Creek*, 839 F. 3d 513, 518 (6th Cir. 2016) (internal citations omitted).

Defendants' argument for qualified immunity is that "Plaintiff has failed to allege any active unconstitutional behavior committed by Defendant, Chief Craig." (ECF No. 3-2 at Pg ID 67.) The Court agrees. As stated in the previous section, Plaintiff fails to sufficiently allege any personal involvement, either directly or indirectly, of Chief Craig. Plaintiff's allegations are conclusory and fail to meet the *Iqbal-Twombly* standard. Although the remaining Individual Defendants join and concur in the instant motion, they do not provide separate arguments to support a dismissal of Plaintiff's claims pursuant to qualified immunity. Plaintiff correctly notes that "Defendants in their present motion do not assert that the individual officer Defendants are entitled to qualified immunity, or alternatively, that there was no violation of Plaintiff's constitutional rights." (ECF No. 14 at Pg ID 102.) In short, the Court finds no merit to the remaining Individual Defendants' concurrence to Chief Craig's qualified immunity argument, and the Court declines to address arguments not properly raised and fully briefed in Defendants' motion.

As to Chief Craig's immunity from tort liability based on Plaintiff's state law claims, Plaintiff does not address this issue. However, Mich. Comp. Law §

691.1407(5) provides that "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Again, Plaintiff does not provide any facts to support Chief Craig's personal involvement of the alleged misconduct.

Accordingly, Counts IV, V, and VI of Plaintiff's Complaint are dismissed as to Chief Craig.

### D. State Law Claims

Plaintiff alleges state law claims for intentional infliction of emotional distress, gross negligence, assault and battery, willful and wanton misconduct, and false imprisonment against all Individual Defendants. As to the false imprisonment claim, Defendants argue that "Plaintiff's restraint and/or confinement was limited to only a brief period, insider her home, for the purpose of allowing the Individual Defendants to safely execute a narcotics search warrant." (ECF No. 3-2 at Pg ID 69.) Defendants also argue that the Court should decline supplemental jurisdiction over the state law claims because "[e]xceptional circumstances are present in this case because of the likelihood of jury confusion, judicial inefficiency, substantial inconvenience to the parties, and potential unfairness in outcome that could result if Plaintiff's state law claims and federal claims are tried together." (*Id*. at Pg ID 73.)

### 1. False Imprisonment

As to Plaintiff's false imprisonment claim, under Michigan law, Plaintiff must demonstrate that there was "(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh v. Taylor*, 263 Mich. App. 618, 627 (2005). "An essential component of a false imprisonment claim is that the imprisonment was false, i.e., that the defendant lacked any right or authority to confine the plaintiff. Stated differently, to be 'false,' the restraint must be illegal, i.e., must have occurred without probable cause or other lawful authority to support it." *Dean v. City of Warren*, No. 319858, 2015 Mich. App. LEXIS 130, at *34-35 (June 23, 2015) (unpublished case).

The sole basis of Defendants' dismissal of Plaintiff's false imprisonment claim is that Plaintiff's confinement was "limited to only a brief period." The duration of the confinement is disputed and will not be resolved at this stage of the litigation. Plaintiff sufficiently alleges the elements for false imprisonment under Michigan law: Defendants confined her during the raid of her home; she and Defendants were aware of her confinement; and Defendants were without probable cause to confine her. The duration of the confinement is irrelevant under 12(b)(6).

Therefore, the Court denies Defendants' request to dismiss Plaintiff's false imprisonment claim for failure to state a claim.

## 2. Supplemental Jurisdiction

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Section 1367 provides that

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim … if
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). District courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). The court's discretion, however, is circumscribed by considerations of "'judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "After a [Rule] 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Id.* at 1255 (citations omitted) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing state law claims, or remanding them to state court if the action was removed.").

At this time, Plaintiff's federal claims remain pending before the Court. Furthermore, Plaintiff's state law claims do raise novel or complex issues of state law,

nor do they substantially predominate any of Plaintiff's federal claims. Contrary to Defendants' position, there appears to be no compelling reason to decline supplemental jurisdiction over the state law claims, especially in light of the pending federal claims. The Court is not convinced that trying the federal and state law claims together will lead to jury confusion, judicial inefficiency, substantial inconvenience to the parties, and potential unfairness in outcome. Plaintiff alleges state law claims involving the same facts and, more than likely, the same evidence. The Court is confident the jurors are equipped to apply the relevant law, as given to them by the Court, to reach a conclusion based on either Michigan or federal law.

At this time, the Court declines to dismiss Plaintiff's state law claims.

**IV. Conclusion**

In summary, the Court is **GRANTING IN PART AND DENYING IN PART** the motion to dismiss (ECF No. 3).

**IT IS ORDERED** that Defendant Chief James Craig is **DISMISSED** from Counts I, II, IV, V, and VI of the Complaint;

**IT IS FURTHER ORDERED** that Chief James Craig is **DISMISSED WITH PREJUDICE** from Count III of Plaintiff's Complaint.

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: November 7, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 7, 2017, by electronic and/or U.S. First Class mail.

                                                s/ R. Loury
                                                Case Manager