UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FANESTER JAMES,

      Plaintiff,                            Civil Case No. 17-10506
                                                Honorable Linda V. Parker

      v.

CITY OF DETROIT, a municipal corporation,
SAMUEL PIONESSA, REGINALD BEASLEY,
NICO HURD, ALANNA MITCHELL,
JUAN DAVIS, JOHNNY FOX,
SAMUEL GALLOWAY, JASON CLARK,
AND LAMAR WILLIAMS,
in their individual and official capacities,

      Defendants.
_____/

## OPINION & ORDER GRANTING DEFENDANTS' MOTION & SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT (ECF NOS. 58 & 68)

Police officers rammed Plaintiff Fanester James's front door into her face during a narcotics raid.  Plaintiff filed this lawsuit against the City of Detroit and City of Detroit Police Officers Samuel Pionessa, Reginald Beasley, Nico Hurd, Alanna Mitchell, Juan Davis, Johnny Fox, Samuel Galloway, Jason Clark, and Lamar Williams, alleging excessive force, unlawful search and seizure, as well as various state law claims.  Presently before the Court are Defendants' motion and supplemental motion for summary judgment.  (ECF Nos. 58 & 68.)  The motions have been fully briefed.  (ECF Nos. 58, 61, 63, 68, 69.)  Finding the facts and legal

1

arguments sufficiently presented in the parties' briefs, the Court dispensed with oral argument pursuant to Local Rule 7.1(f). For the reasons that follow, the Court grants Defendants' motions.

## BACKGROUND

On September 5, 2016, Defendant Beasley observed a controlled narcotics transaction at 7183 Mackenzie—Plaintiff's home address. (ECF No. 58-4 at Pg. ID 907.) The next day, Defendant Beasley obtained a search warrant for Plaintiff's home and its curtilage, (*id.*), and Defendants executed a narcotics raid, (ECF No. 58-13 at Pg. ID 1129.)

Outside of Plaintiff's home, Defendants exited the van upon arriving at the location, and shouted a combination of "Detroit," "police," and "warrant" while running to Plaintiff's front porch. (*Id.* at Pg. ID 1115.) After Defendants arrived at the front porch, Defendant Pionessa ordered Defendant Hurd to ram open the front door. (*Id.* at Pg. ID 1126; ECF No. 58-12 at Pg. ID 1090.) Defendant Hurd complied. (ECF No. 58-6 at Pg. ID 926.)

Inside of Plaintiff's home, Plaintiff's dog became alert at some point during Defendants' approach. (ECF No. 58-7 at Pg. ID 960.) Plaintiff also heard "a noise," though she asserts she did not hear Defendants' announce "Detroit," "police," or "warrant." (*Id.*; ECF No. 61 at Pg. ID 1342.) Plaintiff stated that she moved towards the front door and, after placing her hand on the door knob, made

"direct eye contact" with Defendant Pionessa through the front door window. (ECF No. 58-10 at Pg. ID 1004, 1006; ECF No. 58-7 at Pg. ID 961.) Then, the door forced open, striking Plaintiff in the face and knocking her into a wall. (ECF No. 58-10 at Pg. ID 1007.)

Plaintiff testified during her deposition that after Defendants entered her home, Defendant Pionessa first yelled, "I'm going to kill her," then yelled, "[g]et your dog out or I'm going to kill her." (ECF No. 58-7 at Pg. ID 963 (internal quotation marks omitted).) As Defendants searched the home, Plaintiff sat unhandcuffed in a living room chair and held her dog. (*Id*. at Pg. ID 963, 965.) Plaintiff testified that, at some point, Defendant Pionessa took her into a separate room and said: "I just want to make sure we're on the same page. . . . You fell and hit your head before we got here, right? I just don't want this to go any further . . . You don't need an ambulance. You can take care of that little cut, can't you?" (*Id*. at Pg. ID 963 (internal quotation marks omitted).) Defendants departed and, later in the day, Plaintiff called 911 and received stiches on her eye at Henry Ford Hospital. (*Id*. at Pg. ID 959, 968, 972.) Defendant Pionessa denies having the aforementioned conversation, as well as making eye contact with Plaintiff. (ECF No. 58-13 at Pg. ID 1126-27.)

On February 16, 2017, Plaintiff filed this suit alleging (i) excessive force; (ii) unlawful search and seizure; (iii) municipal liability; (iv) intentional infliction

of emotional distress; (v) gross negligence, willful and wanton misconduct, and assault and battery; and (vi) false imprisonment.[1]  (ECF No. 1.)  Defendants were served with Plaintiff's complaint and a summons on March 28, 2017.  (ECF Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13.)

Shortly thereafter, on April 6, 2017, Officer Alexander Collrin—who is not named in this suit—cited Plaintiff for driving without a valid license, driving an unregistered vehicle, and possessing no insurance.  (ECF No. 61-12.)  Approximately one year later, on March 26, 2018, Inspector Billy Jones—who also is not named in this suit—issued a "blight violation warning" for issues related to Plaintiff's lawn care and placement of trash containers.  (ECF No. 61-14.)

On August 20, 2019, Plaintiff filed an amended complaint, which included a claim for First Amendment retaliation against all Defendants.  (ECF No. 67.)

## LEGAL STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

---

[1] In her response to Defendants' motion, Plaintiff waived the false imprisonment claim under Count VI.  (ECF No. 61 at Pg. ID 1376.)

4

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a reasonable jury could find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## APPLICABLE LAW & ANALYSIS

### Count I:  Excessive Force

A claim of excessive force requires that a plaintiff demonstrate that the force used in effecting the seizure was "objectively unreasonable."  *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  "Whether a constitutional violation based on excessive force occurred depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight."  *Bozung v. Rawson*, 439 F. App'x 513, 519 (6th Cir. 2011) (internal quotation marks and citations omitted).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.  Here, Plaintiff argues that excessive force was used when Defendant Pionessa ordered Defendant Hurd to ram the door open after Plaintiff made eye contact with Defendant Pionessa.  (ECF No. 61 at Pg. ID 1360.)  But even accepting Plaintiff's version of events as true, Plaintiff's claim fails.

This is because Plaintiff would have the factfinder believe that the events happened in the following order:  (i) eye contact; (ii) Defendant Pionessa's order to ram; then (iii) forced entry.  But, in her deposition testimony, Plaintiff stated only that—from *eye contact to forced entry*—one second passed.  (ECF No. 58-7 at Pg.

ID 962-63.)  For the purposes of this analysis, the Court accepts this as fact.  The next question is:  when did Defendant Pionessa give the *order* to ram?  Plaintiff points to no answer and provides no evidence upon which a jury can establish this fact.  To be clear, if the order was given *before* the alleged eye contact, the force used cannot be said to be "objectively unreasonable."   If the order was given *after* the alleged eye contact, Plaintiff's allegation perhaps has legs.

Because Plaintiff provides no evidence regarding when Defendant Pionessa even gave the order (e.g., Plaintiff hearing Defendant Pionessa yell the order after the alleged eye contact), a more apt recitation of Plaintiff's argument is as follows: because the alleged eye contact was made and then the door forced open, the order *must have* been given sometime after the alleged eye contact.  This argument is faulty.  Without affirmative evidence of when the order was given, the probability that the order was given *before* the alleged eye contact is *equal* to the probability that the order was given *after* the alleged eye contact.

In other words, to make out her argument of (i) eye contact; (ii) Defendant Pionessa's order to ram; then (iii) forced entry, Plaintiff provides only a mere basis for speculation or conjecture—specifically, eye contact was made then the door forced open—and asks that the factfinder guess to fill in the important detail of when the order was given.  Such a request is improper.  *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("[T]o survive a motion for summary

judgment, the non-moving party must . . . show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." (citations omitted)); *see also St. v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that respondents must "present affirmative evidence in order to defeat a properly supported motion for summary judgment" (citations omitted)); *Pers. v. Wal-Mart Stores, Inc.*, 921 F.2d 276 (6th Cir. 1990) (unpublished) (affirming summary judgment where jury could only speculate about facts for which evidence was lacking).

Because Plaintiff fails to present evidence regarding when Defendant Pionessa gave the order, there is insufficient evidence with which a jury can reasonably conclude that Defendant Pionessa gave the order to ram after making the alleged eye contact with Plaintiff.  Thus, no genuine issues of material fact remain and Defendants are entitled to summary judgment as to Count I.

<u>Count II:  Unlawful Search & Seizure</u>

Plaintiff proffers four arguments to support her claim of unlawful search and seizure:  the first disputes the search warrant's probable cause and the remaining arguments relate to an allegedly improper knock and announce.  The Court finds each of these arguments unpersuasive.

First, Plaintiff argues that the warrant was invalid because Defendant Beasley provided false information to obtain the warrant.  Plaintiff states that

Defendant Beasley, in his September 6, 2016 sworn affidavit, said that the narcotics seller entered Plaintiff's home "through the front door" but, during his October 10, 2018 deposition, said that he only saw the seller enter Plaintiff's enclosed porch. (ECF No. 61 at Pg. ID 1361.) Plaintiff further argues that the enclosed porch and Plaintiff's home are separate and distinct. (*Id*. at Pg. ID 1361-62.) Therefore, "nothing connect[ed] Plaintiff's home . . . to [the] sale" and the search warrant lacked probable cause. (*Id*. at Pg. ID 1361.) The Court disagrees.

As an initial matter, the search warrant included the home's curtilage, (ECF No. 58-4 at Pg. ID 906), and a home's curtilage includes the front porch. The Supreme Court has explained that "the area immediately surrounding and associated with the home—what [their] cases call the curtilage—[i]s part of the home itself." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal quotation marks and citation omitted). In *Jardines*, the Supreme Court observed that "[t]he front porch is the classic exemplar" of curtilage. *Id.* at 7. (citation omitted); *see also Brennan v. Dawson*, 752 F. App'x 276, 281 (6th Cir. 2018) ("[The defendant] entered [the plaintiff's] curtilage by setting foot on the front porch . . . . The front porch is merely an extension of the home itself.")

As it concerns Defendant Beasley's alleged misrepresentation in the affidavit supporting the search warrant, the Sixth Circuit has explained that courts should consider whether an alleged misrepresentation is material to the issuance of

the warrant.  *See Sinick v. Cty. of Summit*, 76 F. App'x 675, 682-83 (6th Cir. 2003).

In *Sinick*, the Sixth Circuit found that even if the affidavit had been changed to

correct "the laundry list of alleged misrepresentations," "probable cause still

existed for the issuance of the warrant."  *Id.* at 683.  Here, because the curtilage of

Plaintiff's home includes the front porch, Defendant Beasley's alleged

misrepresentation is immaterial and probable cause still existed.

Moreover, concerning the other individual Defendants, the Sixth Circuit

"assess[es] probable cause from the perspective of a reasonable officer at the time

he acted."  *Beckham v. City of Euclid*, 689 F. App'x 409, 416 (6th Cir. 2017).

"Police officers are entitled to rely on a judicially secured warrant for immunity

from a § 1983 action . . .  unless the warrant is so lacking in indicia of probable

cause, that official belief in the existence of probable cause is unreasonable."

*Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989) (citation omitted).

Here, the other individual Defendants relied on the search warrant obtained by

Defendant Beasley.  And even if Defendant Beasley made the alleged

misrepresentation, "that alleged error was not apparent from the face[] of the

warrant[], so for . . . § 1983 liability, [the other individual Defendants] were

entitled to rely on them."  *Beckham*, 689 F. App'x at 417 (White, H., concurring).

Second, Plaintiff argues that she did not hear Defendants announce their

presence.  (ECF No. 69 at Pg. ID 2009.)  Indeed, "[t]he knock and announce rule

forms a part of the reasonableness inquiry" required when analyzing claims of unlawful search and seizure. *United States v. Pinson*, 321 F.3d 558, 566 (6th Cir. 2003) (internal quotation marks and citation omitted). "Law enforcement officers must knock and announce their presence and authority before entering a residence to execute a warrant." *Id.* at 565 (citations omitted).

But Plaintiff does not address Defendants' argument that "an occupant's inability to hear a knock does not create a fact question as to whether one occurred." (ECF No. 68-2 at Pg. ID 1981-82.) And Defendants are correct: a plaintiff's testimony that she "did not hear the police knock and announce does not give rise to a reasonable inference that the police failed to do so and thus is insufficient to defeat summary judgment." *Pierce v. Burkart*, 2005 WL 1862416, at *5 (E.D. Mich. Aug. 4, 2005).

Third, Plaintiff contends that Defendants did not knock on her door. (ECF No. 69 at Pg. ID 2010-11.) But this does not matter. In *United States v. Hardin*, where the plaintiff complained that the officers did not knock before entering the residence, the Sixth Circuit explained that, "[d]espite its title," "the knock-and-announce rule does not require a knock; rather, an announcement of the officer's identity and purpose suffices." 106 F. App'x 442, 445 (6th Cir. 2004) (citing *United States v. Spikes*, 158 F.3d 913, 925 (6th Cir. 1998)). Here, as in *Hardin*, the

Defendants' announcement—"Detroit," "police," and "warrant"—provided adequate notice to Plaintiff. *See id.* at 446.

Finally, Plaintiff contends that Defendants did not wait a reasonable amount of time between announcing their presence and forcing entry. *See Pinson*, 321 F.3d at 565 (observing that "police must wait a reasonable period of time before physically forcing their way into a residence" (internal quotation marks and citations omitted)). Even if a factual dispute exists as to the precise waiting period and even if a reasonable jury could find that the waiting period was unreasonable, the Court concludes that Defendants are entitled to qualified immunity.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citation omitted). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability. . . ." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citation omitted); *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015) (observing that the Court must "determine whether the contours of the right at issue have been made sufficiently clear to give a reasonable official fair warning"). Notably, the plaintiff

bears the burden of convincing the Court that the law is clearly established. *Baynes*, 799 F.3d at 610 (citation omitted).  For two reasons, Plaintiff fails to hit the mark.

First, and most importantly, Plaintiff does not cite a *single* decision analyzing how many seconds must pass before a waiting period becomes reasonable.  Thus, she does not even attempt to carry her burden of showing that the law is clearly established.  *Ruffin v. Cuyahoga Cty.*, 708 F. App'x 276, 278 (6th Cir. 2018) (affirming summary judgment where plaintiff "does not even attempt" to "cite[] a single case").

Second, the Sixth Circuit has refused to adopt a "bright-line rule for every case" in which an officer's waiting period is allegedly unreasonable.  *Spikes*, 158 F.3d at 926.  After examining cases similar to the situation Defendants confronted, it is clear to the Court that the application of the "flexible requirement of reasonableness" against these "fact-sensitive" situations does not make this area of the law so clearly established that it is "beyond debate."  *Id.* (citation omitted); *Morgan v. Fairfield Cty.*, 903 F.3d 553, 564 (6th Cir. 2018) (citation omitted); *see also United States v. Johnson*, 215 F.3d 1328 (unpublished) (6th Cir. 2000) (5 seconds sufficient); *Pinson*, 321 F.3d at 569 (5 to 10 seconds sufficient); *United States v. Banks*, 540 U.S. 31, 38 n.5 (2003) (citing *United States v. Markling*, 7 F.3d 1309, 1318-19 (7th Cir. 1993) (7 seconds sufficient)); *Spikes*, 158 F.3d at 927

(15 to 30 seconds sufficient); *United States v. Pennington*, 328 F.3d 215, 222 (6th Cir. 2003) (citing *United States v. Jones*, 208 F.3d 603, 610 (7th Cir. 2000) (5 to 13 seconds sufficient)) (8 to 10 seconds sufficient); *United States v. Gatewood*, 60 F.3d 248 (6th Cir. 1995) (10 seconds sufficient); *but see Spikes*, 158 F.3d at 927 (citing *Griffin v. United States*, 618 A.2d 114, 121 (D.C. App. 1992) (30 seconds unreasonable)). Accordingly, Defendants are entitled to qualified immunity as it concerns this theory of Count II.

### Count III: Municipal Liability

Plaintiff asserts a *Monell* claim against the City of Detroit, alleging a failure to hire, train, supervise, and discipline its police officers, in addition to a claim that the City's inadequate policies resulted in the unconstitutional actions alleged in Counts I and II. (ECF No. 61 at Pg. ID 1365-72.)

Local governments may not be sued for § 1983 constitutional violations inflicted solely by its employees or agents under a *respondeat superior* theory of liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, when a § 1983 claim is made against a municipality, a court must analyze two distinct issues: "(1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation" via a municipal policy or custom. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Here, however, the Court has determined that either no constitutional

14

violation occurred or the individual Defendants are entitled to qualified immunity.

Regarding the latter, as the Sixth Circuit has observed, "[t]he absence of a clearly

established right spells the end of [a] *Monell* claim." *Arrington-Bey v. City of*

*Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738

(2018). Therefore, the Court grants summary judgment as to Count III.

<u>Count IV: Intentional Infliction of Emotional Distress</u>

To establish a claim of intentional infliction of emotional distress ("IIED"),

a Plaintiff must show "(1) extreme and outrageous conduct, (2) intent or

recklessness, (3) causation, and (4) severe emotional distress." *Haverbush v.*

*Powelson*, 551 N.W.2d 206, 209 (Mich. Ct. App. 1996) (citations omitted). The

emotional distress must be "so severe that no reasonable man could be expected to

endure it." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. j (Am. Law. Inst.

1965)). Conduct is considered "extreme and outrageous" only if it is "so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency and to be regarded as atrocious and utterly intolerable in a

civilized community." *Id.* (citation omitted).

To support her IIED claim, Plaintiff argues that Defendant Pionessa

committed two acts. First, Plaintiff contends that Defendant Pionessa "order[ed]

the door battered down despite having seen Plaintiff behind the door." (ECF No.

61 at Pg. ID 1374.) This argument fails because, though "Plaintiff discusses her

physical injuries in her response[,] [] she does not discuss any severe emotional distress she purportedly suffered" when the door slammed in her face. *Ostaszewski v. Zelenocks*, 2016 WL 11258760, at *12 (E.D. Mich. Dec. 8, 2016), *report and recommendation adopted*, 2017 WL 405937 (E.D. Mich. Jan. 31, 2017); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (stating that IIED claims "require[] actual 'emotional distress'" under Michigan law). Moreover, Plaintiff makes no argument regarding whether Defendant Pionessa's action meets the "very high burden [of] extreme or outrageous conduct." *Schliewe v. Toro*, 138 F. App'x 715, 723 (6th Cir. 2005) (citation omitted).

In addition, under Michigan law, government actors are immune from tort liability if, among other things, "the acts were undertaken in good faith, or were not undertaken with malice." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 783-84 (6th Cir. 2015) (citing *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008)). "The Michigan Supreme Court define[s] a lack of good faith . . . as malicious intent, capricious action or corrupt conduct or willful and corrupt misconduct." *Id.* at 784 (internal quotation marks and citations omitted). For the reasons discussed as to Count I, Plaintiff fails to show that Defendant Pionessa acted with malicious intent when he gave the order to ram the door open. Thus, he is entitled to qualified immunity as it concerns his order to force entry.

Second, Plaintiff argues that Defendant Pionessa intentionally inflicted emotional distress when he "[took] Plaintiff into the room alone and threaten[ed] her." (ECF No. 61 at Pg. ID 1374.) This argument also fails because "[l]iability will not be found for mere insults, indignities, *threats*, annoyances, petty oppressions, or other trivialities." *Garretson*, 407 F.3d at 799 (emphasis added) (internal quotation marks and citations omitted). As Plaintiff concedes, Defendant Pionessa's statements—assuming he made them—amount to mere threats.

Because Plaintiff does not dispute Defendants' contention that immunity under the Government Tort Liability Act is warranted as to the City of Detroit, (*see* ECF No. 58-2 at Pg. ID 896; ECF No. 61 at Pg. ID 1372-74), and Plaintiff argues that only Defendant Pionessa committed acts that inflicted emotional distress, the Court grants summary judgment as to Count IV against all Defendants.

## Count V: Gross Negligence, Willful and Wanton Misconduct, & Assault and Battery

Plaintiff argues that "striking [her] with the door constitutes a battery." (ECF No. 61 at Pg. ID 1375.) But, as discussed concerning Count IV, Plaintiff has not shown that any Defendant acted with malicious intent during the execution of the narcotics raid. *Kreipke*, 807 F.3d at 783-84 (citing *Odom*, 760 N.W.2d at 228) (explaining that immunity applies if, among other things, "the acts were undertaken in good faith, or were not undertaken with malice"). Plaintiff further argues that yelling, "I'm going to kill her," constitutes an assault because, "at the

17

time[,] Plaintiff reasonably believed the [Defendant Pionessa] meant to kill Plaintiff." (ECF No. 61 at Pg. ID 1376.) But Plaintiff concedes in her response brief that the first statement "appears to be in reference to Plaintiff's dog" because Defendant Pionessa immediately follows with, "[g]et your dog out or I'm going to kill her." (*Id.*; ECF No. 58-7 at Pg. ID 963.) Plaintiff does not argue and there is no evidence that Defendant Pionessa acted with malice when he allegedly yelled the first statement. Accordingly, Defendant Pionessa is entitled to immunity regarding Plaintiff's assault and battery claims.

Regarding Plaintiff's gross negligence claim, the Sixth Circuit has observed that "Michigan's immunity statute does not [] provide an independent cause of action for 'gross negligence,' and plaintiffs may not bypass the immunity statute by 'transforming intentional excessive force or battery claims into negligence claims.'" *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 701 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1551 (2019). Here, Plaintiff argues that "Defendant Pionessa recklessly disregarded Plaintiff's physical rights when he ordered the door battered after making eye contact with her." (ECF No. 61 at Pg. ID 1375.) Because Plaintiff attempts to reframe her intentional excessive force claim as a claim for gross negligence, summary judgment is granted as to this claim.

Finally, Plaintiff abandoned her willful and wanton misconduct claim, as she does not mention or discuss it in her response to Defendants' summary judgment

18

motion.  *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)

("This Court's jurisprudence on abandonment of claims is clear:  a plaintiff is

deemed to have abandoned a claim when a plaintiff fails to address it in response

to a motion for summary judgment.")).

Accordingly, Defendants are entitled to summary judgment as to Count V.

Count VII: First Amendment Retaliation

As an initial matter, Plaintiff does not dispute Defendants' contention that

any claim of First Amendment retaliation fails as to the individual Defendants.

(*See* ECF No. 68-2 at Pg. ID 1973-74; ECF No. 69 at Pg. ID 2003 ("Defendants'

next erroneous claim is that Plaintiff has failed to show 'personal involvement' by

any of the Defendants.  However, the City of Detroit can be a defendant for

purposes of Plaintiff's retaliation claim.").)  Thus, the Court grants summary

judgment as to Count VII against all individual Defendants.  Only the City of

Detroit remains.

As discussed above, when a § 1983 claim is made against a municipality, the

municipality "cannot be held responsible for a constitutional deprivation unless

there is a direct causal link between a municipal policy or custom and the alleged

constitutional deprivation."  *Littlejohn v. McCafferty*, 83 F. App'x 705, 707 (6th

Cir. 2003).  "The custom or policy must be the 'moving force' behind the

constitutional violation, so the plaintiff needs to 'identify the policy, connect the

policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir. 2014) (internal quotation marks and citations omitted).

Plaintiff argues that the citations and "blight violation warning" were issued by Officer Collrin and Inspector Jones, respectively, to retaliate against Plaintiff for filing this suit. The Court need not analyze the first prong of the *Monell* framework because Plaintiff does not satisfy the second prong.

Indeed, Plaintiff identifies no *specific* municipal policy or custom. Rather, nearly all of Plaintiff's *Monell* arguments relate to the constitutional deprivations alleged in Counts I and II. (*See* ECF No. 61 at Pg. ID 1365-72.) To support her argument for municipal liability as to Count VII, Plaintiff offers a single sentence: "the City of Detroit utilize[s] intricate operational procedures that [] limit specific individuals' exposure by having safeguards in place." (ECF No. 69 at Pg. ID 2003.) This sentence does not amount to the identification of a specific policy or custom. Nor does it show how the unidentified policy led, caused, or directed Officer Collrin and Inspector Jones to play a role in the alleged retaliation against Plaintiff. As such, the Court grants summary judgment as to Count VII against the City of Detroit.

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment on all counts.

Accordingly,

**IT IS ORDERED** that Defendants' motion and supplemental motion for summary judgment (ECF Nos. 58 & 68) are **GRANTED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 20, 2019